UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATIONAL INDEPENDENT TRUCKERS
INSURANCE COMPANY, RRG,

Plaintiff,

vs.   Case No. 8:16-cv-3081-T-27TGW

WILNER MATHIEU d/b/a MATHIEU
EXPRESS, et al.,

Defendants.
_____/

## ORDER

**BEFORE THE COURT** is National Independent Truckers Insurance Company's Motion for Summary Judgment (Dkt. 52), which Alene Desir and Wilner Mathieu d/b/a Mathieu Express oppose (Dkts. 54, 76).[1] Upon consideration, the Motion is GRANTED.

**I. Undisputed Material Facts**

The evidence in this declaratory judgment action is undisputed.[2] Plaintiff issued a commercial motor vehicle insurance policy to Wilner Mathieu d/b/a Mathieu Express ("Mathieu") applicable for the period of November 18, 2013 to November 18, 2014. (Dkt. 66 at 5). Two drivers, Wilner Mathieu and Jean E. Moise, were reported drivers on the policy. (Dkt. 66 at 11).

On December 27, 2013, Wilbert Sanon, an unreported driver, was driving a Mathieu owned tractor-trailer rig when he was involved in an automobile accident with a vehicle operated by Arisner

---

[1] Arisner Agenor did not respond. Wilbert Sanon was dismissed without prejudice. (Dkt. 36). Default final judgment was entered against Yvonie Agenor and Mathieu Express, LLC. (Dkts. 50, 64).

[2] Plaintiff, Desir, and A. Agenor filed a Joint Stipulation to Certain Facts. (Dkt. 51).

1

Agenor in which Alene Desir was a passenger. (Dkt. 51 ¶ 1; Dkt. 66 at 11). At the time of the accident, Sanon was delivering a load from Kissimmee, Florida to Pompano Beach, Florida. (Dkt. 51 ¶ 2). This shipment of nonhazardous material was entirely within the State of Florida. (Dkt. 51 ¶ 2). And, on the date of the accident, Sanon did not drive a tractor-trailer assembly outside of the State of Florida. (Dkt. 51 ¶ 2). The weight of the tractor-trailer rig exceeded 10,000 pounds. (Dkt. 51 ¶ 3). And, the gross vehicle weight was 80,000 pounds. (Dkt. 66 at 9).

The policy's Unreported Driver Coverage Endorsement provides:

> The limit of insurance provided by this policy with respect to any accident involving an unreported driver to which this insurance applies, including any accident with an uninsured or underinsured vehicle, shall be the minimum liability insurance coverage required under the Motor Vehicle Compulsory or Financial Responsibility Laws of the State having jurisdiction with respect to the issuance of this policy or the State in which the accident occurred if the law of that State requires that its motor vehicle Financial Responsibility Laws must be applied to the accident.

(Dkt. 68 at 3).[3]

## II. Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

---

[3] The complete policy was filed in accordance with this Court's Order. (Dkts. 63, 66-68).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citation omitted). On the other hand, "'[i]f no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted.'" *Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir.1994)).

## III. Discussion

Plaintiff contends that the undisputed evidence shows that Sanon was transporting nonhazardous materials in intrastate commerce at the time of the accident. And pursuant to the Unreported Driver Coverage Endorsement, the minimum limits of insurance, $300,000, under Fla. Stat. § 627.7415 apply, rather than the minimum limits of insurance, $750,000, under 49 C.F.R. § 387.9. Rather than rebutting Plaintiff's evidence, Desir speculates that the tractor-trailer "was engaged in foreign and interstate commerce" and therefore the minimum limits of $750,000 apply.[4] Desir's position is unsupported and does not create a genuine issue of material fact.

The Motor Carrier Act of 1980 addresses financial responsibility for trucking accidents. 49 U.S.C. § 13906(a); *see Nat'l Specialty Ins. Co. v. Martin-Vegue*, 644 F. App'x 900, 906 (11th Cir. 2016). It applies, with exceptions, to "for-hire motor carriers operating motor vehicles transporting

---

[4] Mathieu adopts Desir's response. (Dkt. 76 at 1). Additionally, Mathieu argues, without support, that Plaintiff is not authorized to do business in Florida and that the insurance policy and endorsements may not comply with Florida law. (Dkt. 68). Without more, Mathieu's argument lacks merit.

3

property in interstate or foreign commerce" and "to motor carriers operating motor vehicles transporting hazardous materials, hazardous substances, or hazardous wastes in interstate, foreign, or intrastate commerce." 49 C.F.R. § 387.3. And, it requires motor carriers registered to engage in interstate commerce to carry a minimum amount of insurance.[5] 49 U.S.C. § 13906(a); *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873-74 (10th Cir. 2009); *Martin-Vegue*, 644 F. App'x at 906.

The majority of courts considering whether the financial responsibility requirements of the MCA apply initially determine the nature of the transport "at the time of the accident." *See Martin-Vegue*, 644 F. App'x at 907 ("the relevant question is whether Freight was the for-hire motor carrier . . . at the time of the accident"); *Herrod v. Wilshire Ins. Co.*, 499 F. App'x 753, 760 (10th Cir. 2012) (remanded to determine whether driver was acting as "for-hire" at the time of the accident); *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 251 (5th Cir. 2010) (recognizing that the "at the time of the accident" analysis is the majority approach)[6].

---

[5] Compliance with the MCA minimum insurance requirements can be shown in one of three ways: (1) the MCS-90 endorsement, (2) a surety bond, or (3) self-insurance authorization from the Federal Motor Carrier Safety Administration. *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873-74 (10th Cir. 2009) (citing 49 C.F.R. § 387.7(d)(1)-(3); *see Canal Ins. Co. v. Distrib. Servs., Inc.*, 320 F.3d 488, 489 (4th Cir.2003)). The MCS-90 endorsement "creates a suretyship, which obligates an insurer to pay certain judgments against the insured arising from interstate commerce activities, even though the insurance contract would have otherwise excluded coverage." *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 247 (5th Cir. 2010) (citing *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 470 (5th Cir.2005)); *see Martin-Vegue*, 644 F. App'x at 907 (recognizing a majority of courts treat the MCS-90 endorsement as a suretyship). The complete policy filed by Plaintiff does not contain the MCS-90 endorsement. (Dkts. 66-68). Although Desir contends Mathieu possessed the MCS-90 endorsement (Dkt. 54 at 6), it is not part of the record. Fed. R. Civ. P. 56(c)(1)(A). Notwithstanding, the MCS-90 endorsement is immaterial.

[6] (citing *see, e.g., Century Indem. Co. v. Carlson*, 133 F.3d 591, 595 (8th Cir.1998) (agreeing with "the determination that the grain in question in this case at the time of the accident traveled in interstate commerce" (emphasis added)); *Canal Ins. Co. v. J. Perchak Trucking, Inc.*, 3:CV–07–2272, 2009 WL 959596, at *2 (M.D.Pa. Apr. 6, 2009) (denying summary judgment because "[c]onsideration of the important issues presented in this case should be made only in the context of a concrete determination as to whether the insured's vehicle was involved in interstate or intrastate commerce at the time of the accident" (emphasis added)); *Canal Ins. Co. v. Paul Cox Trucking*, 1:05–CV–2194, 2006 WL 2828755, at *4 (M.D.Pa. Oct. 2, 2006) (holding that a federal court has jurisdiction over the question of whether truck was "engaged in interstate commerce *at the time of the accident*" (emphasis added)); *Kolencik v. Progressive Preferred Ins. Co.*, 1:04–CV–3507, 2006 WL 738715, at *7 (N.D.Ga. Mar. 17, 2006) ("Based on the foregoing, the court concludes that endorsement MCS–90 plays no role in the instant accident because it involved only intrastate commerce from Cartersville, Georgia to Acworth, Georgia with no intention of the dirt ever going beyond Acworth."); *Branson v.*

Rather than disputing the nature of the transport at the time of the accident, Desir conclusively argues that the MCA applies because the "rig was intended to travel outside of Florida and possessed the necessary, federally mandated insurance minimums to conduct such interstate business." (Dkt. 54 at 3). Desir fails to point to any evidence to support her position.[7] It is undisputed that at the time of the accident, Sanon was transporting nonhazardous property in intrastate commerce. (Dkt. 51 at 3). Therefore, the financial responsibility requirements of the MCA do not apply. *See Martin-Vegue*, 644 F. App'x at 907; *Herrod*, 499 F. App'x at 760; *Canal*, 625 F.3d at 249.

The Unreported Driver Coverage Endorsement provides that the limit of insurance for accidents involving an unreported driver "shall be the minimum liability insurance coverage required under the **Motor Vehicle Compulsory or Financial Responsibility Laws of the State** having jurisdiction with respect to the issuance of this policy **or the State in which the accident occurred** if the law of that State requires that its motor vehicle Financial Responsibility Laws must be applied to the accident."[8] (Dkt. 68 at 3) (emphasis added). The plain, unambiguous meaning of the Unreported Driver Coverage Endorsement is that Florida's financial responsibility laws applies. *See*

---

*MGA Ins. Co.*, 673 So.2d 89 (Fl.Dist.Ct.App.1996) (declining to apply the MCS–90 to purely intrastate transportation); *Gen. Sec. Ins. Co. v. Barrentine*, 829 So.2d 980, 984 (Fl.Dist.Ct.App.2002) ("The issue is not whether a truck might be used for an interstate shipment in the future. That much could be said of nearly any tractor-trailer rig. Rather, *the issue is whether the injury in question occurred while the truck was operating in interstate commerce*." (emphasis added)). *But see, e.g., Royal Indem. Co. v. Jacobsen*, 863 F.Supp. 1537, 1541 (D.Utah 1994) ("In the court's view, Royal's 'trip specific' reading of the Holdens' ICC endorsement (or any ICC endorsement for that matter) is incorrect."); *Travelers Indem. Co. of IL v. W. Am. Specialized Transp. Servs., Inc.*, 235 F.Supp.2d 522, 529–30 (W.D.La.2002) (holding that the truck's procurement or lease agreement, rather than the circumstances of the particular loss, determine the MCS–90's application); *Reliance Nat'l Ins. v. Royal Indem. Co.*, 99–Civ.–10920, 2001 WL 984737, at *4–7 (S.D.N.Y. Aug. 24, 2001) (same)).

[7] Indeed, Desir's contention is the minority approach. *See Coleman*, 625 F.3d at 251.

[8] The parties' dispute is limited to whether federal regulations or Florida law applies.

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (unambiguous insurance contracts construed according to their plain meaning).

Under Fla. Stat. § 627.7415(3), the minimum level of combined bodily liability insurance and property damage liability insurance for a commercial vehicle with a gross vehicle weight of 44,000 pounds or more is $300,000. Therefore, because Sanon was an unreported driver on the policy and the Wilner owned tractor-trailer's gross vehicle weight was 80,000 pounds, the minimum level of combined bodily liability insurance and property damage liability insurance available under the policy for the accident on December 27, 2013 is $300,000. Fla. Stat. § 627.7415(3); *Taurus Holdings*, 913 So. 2d at 532.

Accordingly, National Independent Truckers Insurance Company's Motion for Summary Judgment is **GRANTED**. The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of Plaintiff and **CLOSE** the file.

**DONE AND ORDERED** this 19th day of October, 2017.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record
*Pro se* and Unrepresented Parties